Good morning, Your Honor. Clark Guerin, appearing for the appellate, Imperial Merchant Services. I would like to reserve five minutes of my time. As a preliminary matter, and you may have anticipated this from our discussion in earlier cases, why isn't this case appropriate for certification in the California Supreme Court? Well, I think it certainly is something that's appropriate for certification if there is any doubt about what the rules should be. We looked into that at the trial court level. We didn't have the ability to make that request at the trial court level. But I certainly think under the doctrine of abstention. That's not abstention. That's more comedy. But, I mean, we could say whatever we wanted in terms of either your positions. But if the California Supreme Court says we're wrong, then that's. I have contemplated that problem with this case. So I certainly am not going. I certainly would concur that referral to the California Supreme Court would certainly be an appropriate procedure to do. Well, as long as you're here, let's hear the merits. Okay, Your Honor. The one thing I would like to do to amplify the briefs is my opponent's primary contention is that 1719 is an exclusive remedy. Now, if it is an exclusive remedy, and he points to the enactment of subsection K, which incorporated certain defenses from the UCC. And, I mean, it can't be a piecemeal thing. Either it's exclusive for everything, or it's exclusive for nothing. If it's exclusive for everything, it excludes all other defenses, too. Let me give you a real-life scenario, because this is a case that I'm dealing with now. Not exactly these facts, but pretty close. Let's pretend my office is burglarized. My checkbooks are taken. Back in 2003, I file a police report. And then somebody takes one of my stolen checks and negotiates it. They forge my name to it. I start getting the notices of a bad check. I get a notice under 1719. I'm inundated with stuff. I ignore it. They file a suit against me. I ignore it. They get a judgment against me, and they record an abstract in 2005. I get that stuff. I call up. I complain, but I really don't do anything about it. Then in 2008, when they start levying on my wages, I start really protesting. And I send them the copy of the police report I filed in 2003, which pretty well shows this was an identity theft claim. Now, under the straight law of a judgment, that's a final judgment. I didn't know. I knew about it for six months. Didn't do anything. I'm stuck. But California realized that there's something new with that, with identity theft. So they enacted civil code section 1798.92 and a few other sections along there. Identity theft. They said anyone who was an identity theft victim, which is somebody who had their identity stolen and filed a police report, has certain extra rights. One of those rights are that I can come in at any time, even after a judgment. I can file a case. I can say, hey, I was a victim of identity theft. And if I show that by a preponderance of the evidence, I can make that judgment go away. I can have it enjoined, even though my time for doing it has passed, even though I was really not diligent in pursuing my rights at the time. I can still do that. And not only that, if the creditor doesn't fully investigate and, by the way, I get my attorney fees paid if I win the case. And if I can show that the creditor didn't diligently investigate that claim, I can get up to a $30,000 penalty. Now, under my opponent's case, he says it's an exclusive. He's trying to help somebody who wrote 47 bad checks. And if his theory is correct, all these efforts of the California legislature to help victims of identity theft, bye-bye. I don't see that happening here. This isn't a case about that. No, but if the statute is exclusive, it excludes all other remedies. That's the question in front of us. You've got a different statute involved in your hypothetical, right? Well, yeah, but what he's saying is that 1714.19 excludes all other statutes. It's the sole remedy. If it doesn't say so in 1719, it doesn't apply. He's saying it supersedes every other defense, every other statute. For example, if you had a check that was written by a minor and disaffirmed under his argument that 1719 is the exclusive remedy, it would supersede a minor being able to disaffirm his rights. I think that's his argument. His argument is that he'll probably say his argument doesn't go anywhere near that. I'm sure he will, but that is what the argument is. That is the logical extension of his argument. I'll reserve my time for rebuttal. Thank you. May it please the Court, Ronald Sargis, Hefner, Stark, and Maroi for the California Association of Collectors, who has granted the permission to appear as amicus curiae in this case. Our brief addressed directly the legislative history and the statutory interpretation issues. And so first, following your question on what's my intention or my thought on it being certified to the Supreme Court, if this Court were to look at it and say that from looking at the plain language of the statute and the legislative history and the existing case law in California of how statutes are treated, we can't really define or divine what the California Supreme Court would do, then, yes, you would turn it over to the Supreme Court to give them a chance. But I think when you look through the legislative history and what the California legislature did every step of the way, when a state court either questioned or a state court attempted to limit the penalty imposed under 1719, you come to the inescapable conclusion that 1719 is not an exclusive remedy as to every other obligation a debtor may have when they have a dishonored check, but is intended to impose an additional penalty on top of that that they're going to pay. And if you go back to the legislative history when Member Katz brought the statute, it expressly states in there, 1719 and the treble damages were enacted to give merchants leverage in getting bad check writers to pay the obligation. And the statute was written to have a 30-day window in it in which a notice would be given, so the average wage earner who has two checks coming in a month would get a chance to make good on it. But if they didn't, on top of everything else you owe out there, you end up having to pay the treble damages. I take it you view this as an important case? We do view this as an important case. Even though the amounts at issue, of course, are small. Well, the amounts on each individual check at issue is small, but also it goes to the principle that when someone writes a bad check, the check doesn't replace the other obligations they have arising under contract, goods had and received, other statutory provisions that relate to it. So there's a broader principle that comes into play here where we have a debtor that's trying to say, well, really I can bifurcate or separate, segment out my obligations and just say I'm obligated on this one. And as we identified in our brief, that even a check in and of itself, the California courts have said, is a contract. So we've got a check that's a contract, we could have an implied contract, we could have an express contract underlying it, as part of it, but a debtor owes all these different obligations and the creditor has the right to be paid on all of those obligations. Now, the district court and the bankruptcy court in this case and the cases they relied on looked back and said, well, we know we couldn't allow the treble damages plus interest because that would be double damages and the California Supreme Court has said, no, you can't do that. And they cited back to the greater Westchester case for that. Well, in that case, the California Supreme Court said, we are addressing the pain and suffering damages. And an essential element of the jury in coming to those damages is to look at the time period over which the pain and suffering was incurred to come to that number. You cannot give someone pain and suffering damages for a period of time and also say we want to give you interest on top of that, because interest is built into that calculation. But if you look at the other cases talking about where you have a fixed amount that's owed, the California Supreme Court has said, Mr. Creditor, you have the absolute right to prejudgment interest. They told L.A. County that in the earlier cases with the fireman pension cases that came up, and the California Supreme Court has said, Mr. Creditor, you have the absolute right to prejudgment interest. And the fire district hadn't paid. And it's continued through saying, you have a right. Now, if we look at the statute, then we know that when the legislature went through enacting it, it knew that was well-established law. And at no point in time did it step up and say, we're trying to limit the obligations of the debtor when they write a bad check. They said, we're trying to increase it. Also, with respect to paragraph K that's been discussed, whether that shows it's intended to be an exclusive remedy and exclude all others, you cannot, and that came in at the very last minute, there's no legislative history on it, but at the same time, there's the Cohen case that had come down, where in that case, the plaintiff had argued that an attorney who had written a check on his trust account had strict liability under 1719. And that all of the other defenses under Division III were waived or excluded. And the court in Cohen said, no, it's not intended that way. Well, now, if you look at paragraph K, what paragraph K says is, and the court in Cohen said, even though we have a rule of statute story construction which says when there's a specific provision with respect to an issue, it'll control over the general, Cohen said, no, that doesn't apply here. Clearly, the legislature did not intend to override all of Division III. So when the legislature amends to add paragraph K, the only reason they make reference to Division III is because they're dealing with the general versus specific issue with respect to negotiable instruments. But they aren't tinkering with any of the other obligations and liabilities a debtor has. So in looking at it, and in trying to line up the legislative history for the court, I ended up coming to a simple analysis of what the court said. And there's a methodology to look at it. If the court were to say that the legislature's intent was to remove all the obligation to pay interest and other obligations, and instead have a static amount of money that would be owed, the legislature would be turning the whole statute on its head. Because they'd be telling a debtor, okay, look, bounce whatever check you want. You want to bounce a $10,000 check? You want to bounce a $100,000 check? You're not going to owe any more interest. You're not going to have to pay the creditor for the time value of the delay, because that's all that prejudgment interest is. If the court say, to the date of the judgment, we're going to give you the present value. Instead, Mr. Debtor, what we're going to let you do is bounce the check, say you owe $500 as additional damages, delay as long as you want and don't pay it. Ultimately, when you pay the underlying debt, you're going to pay it in discounted future dollars. So we're going to give you a break, and we're going to give you incentive to delay by overriding the other part of the California law dealing with prejudgment interest. That's clearly not what the legislature intended. That's not what they've said in each of the amendments that have been made along the way. Of course, if a creditor went in and got a judgment, then interest would attach to the judgment? Well, when the creditor ultimately attains a judgment, they would get a judgment for the face amount of the check and the interest going forward on the judgment at 10 percent. But they would have to first go to court. They'd have to get a judgment, and their judgment would only then be for the face amount of the check, which we know, through simple economics, is not their actual damages out of that date because it hasn't compensated them with prejudgment interest for the loss of that money. They've been forced to make an interest-free loan until they can get to court and get a judgment. About two minutes left. Do you want to reserve? Reserve those, Your Honor. Thank you. Good morning, Your Honors. Paul Aarons representing APALE. Just to correct something Mr. Sargis just said, when the creditor went to court and got a judgment, they would be getting a judgment for the check amount plus the treble damage amount. Right. And then they'd be entitled to interest from that point on. And interest on that point only. And counsel for amicus, I think, has stated our position also on the certifications of the Supreme Court. If this Court feels interpretation of the statute is troubling, perhaps certification is appropriate. But there's a reason that four different judges have looked at this and come away. So is the answer pretty much the same really between the lines of both of you? If you're going to rule against me, then certify. But if you're going to rule in my favor, based on the plain arguments, then you should just plunge ahead. My real question is, is this an important issue in California? I mean, and it's purely a question on state law. It's an important issue to the collection industry, which is why amicus is here. It's an important issue to consumers because even though consumers individually may not be losing very much, if there's an unlawful interest charge, cumulatively it adds up to quite a bit of money. And I gather from your client's perspective you just as soon get the case over as soon as possible, I suppose. Well, we have. I mean, this is part of a larger case of class action involving the same parties plus additional plaintiffs in which more money is at stake. And the longer this goes on, the less likely it is we'll ever be able to get money back to the class of plaintiffs. Well, if I understand your position, the bigger the check, the greater the windfall to the person who passed it. No, no, no, no, not at all. First of all, there's this is to understand the statute, you have to look at the legislative history, but the legislative history is not the language of the statute. I write a million-dollar bad check. Yes. What happens? Well, someone can come after you for a million dollars plus a $25 service charge. Plus a what? Plus a $25 service charge. Now I'm delighted. I'm not upset anymore. Or they can sue you on the underlying sales transaction and get all damages, including interest. Sue you? You get it that way. Right. So I have to go to court. So you have an alternative. 1719 and the service charge there are to provide an easy remedy for merchants who feel they have damage as a result of a dishonored check. The easy remedy is only available if it's small checks. Yeah. That's what we'll do. More or less. The easy remedy is there so the merchant going after a $10 or a $20 or a $50 or a $100 or a $500 check doesn't also have to prove their actual damages. They have a statute that says you automatically get the service charge. It doesn't talk in terms of damages. It talks about service charges and it talks about damages. No. The legislative history makes it clear that this service charge amendment was made in response to the case Newman v. where the district court judge was ruling that if a merchant wanted money in addition to the amount of the check, the merchant was going to have to prove their actual damages. And the legislative response to that was to say we will simply establish the service charge as the amount of actual damages. So that's how they got over the problem of the merchant who is out money from a dishonored check in addition to the face amount, but not out enough to actually pursue an action on the sales transaction. They simply want to get compensated for the problem the check has been to them, and that's what the service charge stands for. If there is additional loss, if there is a million-dollar check, the merchant has other remedies. The merchant can pursue on the underlying sales transaction. The commercial code, in the case of a negotiable instrument, the commercial code gives the recipient of the check the option of an action on the check or an action on the sales transaction. What 1719 does is it says in California if what you're pursuing is the check, what you get is the easy remedy of the service charge. If the service charge isn't adequate, the option of going forward on the underlying sales transaction is always available. But getting back to the language of the statute, the statute has, it says, notwithstanding any other penal sanctions which may apply, and then later there was added the section that makes clear that Division III commercial code remedies and claims are available. Now, when they added Section K, they could have, instead of restricting it to Division III, they could have said this statute is not in derogation of any other rights available under civil law. Or something to that effect. They didn't say that. They very specifically singled out Division III, and that must mean something. And what we've heard from appellants and from amicus is that that exception actually means all other civil remedies are available, except the problem with that is that is not what Subsection K says. Subsection is restricted to Division III remedies. I think we have your argument at hand. You have two minutes. Two minutes? Thank you, Your Honor. The important thing I want to say is, and is this an important issue in California? Yes. Does it apply to just collection agencies? No. One of the basic concepts is that when people don't pay bills, all of us pay them. Businesses pass those bills on to other customers who do pay their bills. It is a very important issue in California. And I want to draw the distinction between a remedy and damages. I made that point in my brief. Subdivision K applies to remedies. It doesn't have anything to do with what the damages are. Damages is an entirely different theory, and I'll conclude by saying he just made my same argument. He says the Subsection K means that's the only other provision that applies. None of the other laws do. He says that the identity statute doesn't apply, and he says 1782, the one on the interest, doesn't apply. That's his argument. I think it's wrong. I certainly think if you don't think it's wrong, I agree with your comments on comedy, because we can keep going all over these courts, keep bouncing around and get as many different opinions as there are jurists. We tried from the beginning to get this to the Ninth Circuit because that was the only place we could go. I really think the proper judicial body to resolve this once and for all is the California Supreme Court, as you have suggested, in the event, as my co-counsel, Amicus, has said, in the event you're not absolutely persuaded. Thank you, Your Honor. I have one question. Do you have anything in response to his allegation that you can elect to go against the sales transaction in court and just not use this? Well, that's been one of his whole theories is that a creditor has to sit there at the outset and pick and choose. If they elect to go under 1719, they have automatically made an intelligent waiver of every other possible remedy. We contested that in the trial court. We contested it in our brief. We contest it here now. There is nothing in this legislation, nothing in 1719, that would have the effect of saying, Mr. Creditor, you're on notice. You proceed under 1719, you have absolutely no other remedy. This is one of the problems that we have when attorneys try and make up the laws instead of and expand what the legislature wrote on. You know, the interpretation is that all the laws are to be read together. When you read the laws all together, we don't have this problem with 1719. We only have this problem with 1719 when he tries to read some other words in it that the legislature didn't put there. I see. Stop. Thank you. Thank you both for your arguments. The case is heard. It will be submitted. And we'll be in recess for the morning. All rise. This court is adjourned and stands adjourned. I wondered how long you were going to sit on a marble bench and be a cleric.
judges: Trott, Thomas, Hogan